# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**HERLI GARCIA-VERDECIA,**

        **Plaintiff,**

    **vs.**                            **Civ. No. 22-939 JFR**

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 11)[2] filed February 9, 2023, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing With Supporting Memorandum,* filed June 12, 2023.  Doc. 20.  Defendant filed a Response on September 8, 2023.  Doc. 26.  Plaintiff filed a Reply on September 25, 2023.  Doc. 27.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is not well taken and is **DENIED.**

## I. Background and Procedural Record

Plaintiff Herli Garcia-Verdecia (Mr. Garcia-Verdecia) alleges he became disabled on April 30, 2018, at the age of forty-three years and eight months, because of sleep apnea,

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 7, 8.)

[2]  Hereinafter, the Court's citations to Administrative Record (Doc. 11), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

fibromyalgia, depression, high blood pressure and pre-diabetes.  Tr. 74-75.  Mr. Garcia-Verdecia completed three years of college in 1995.  Tr. 217.  Mr. Garcia-Verdecia worked as a caregiver. Tr. 217.  Mr. Garcia-Verdecia stopped working on April 4, 2018, due to his medical conditions. Tr. 216.

On May 19, 2018, Mr. Garcia-Verdecia filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 466-67.  On November 5, 2018, Mr. Garcia-Verdecia's application was denied.  Tr. 73, 74-85, 101-04.  On April 30, 2019, it was denied again at reconsideration.  Tr. 86, 88-100, 109-115.  Upon Mr. Garcia-Verdecia's timely request, Administrative Law Judge (ALJ) Eric Weiss held a hearing on March 12, 2020.  Tr. 38-59.  Mr. Garcia-Verdecia appeared telephonically with nonattorney disability representative Aurelio Gallardo.[3]  *Id*.  On April 17, 2020, ALJ Weiss issued an unfavorable decision.  Tr. 15-33.  On September 29, 2020, the Appeals Council denied Mr. Garcia-Verdecia's request for review.  Tr. 1-5.

On November 25, 2020, Mr. Garcia-Verdecia timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Tr. 686-87 (*See* USDC NM Civ. 20-1233 SMV (Doc. 1)).  On December 29, 2021, Magistrate Judge Stephan Vidmar entered an Order granting the Commissioner's Unopposed Motion to Remand.  Tr. 688-89.   On February 4, 2022, the Appeals Council entered an Order Remanding Case to Administrative Law Judge instructing that ALJ Weiss's hearing decision did not contain an adequate evaluation of Mr. Garcia-Verdecia's mental impairment.  Tr. 693-98.

On July 21, 2022, ALJ Jeffrey Holappa held a second administrative hearing.  Tr. 618-40. Mr. Garcia-Verdecia appeared with nonattorney disability representative Aurelio Gallardo.  *Id.*

---

[3] Mr. Garcia-Verdecia is represented in these proceedings by Attorney Amber L. Dengler.  Doc. 1.

On August 15, 2022, ALJ Holappa issued an unfavorable decision.  Tr. 592-612.  On

December 12, 2022, Mr. Garcia-Verdecia timely filed a Complaint seeking judicial review of the

Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.      Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income

disability benefits for adult individuals).  The Social Security Commissioner has adopted the

familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria

as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in
> "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful
> activity, he is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or
> mental impairment(s).  If the claimant does not have an impairment(s) or
> combination of impairments that is severe and meets the duration requirement,
> he is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s)
> meets or equals in severity one of the listings described in Appendix 1 of the
> regulations and meets the duration requirement.  If so, a claimant is presumed
> disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity
> one of the listings described in Appendix 1 of the regulations, the ALJ must

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R.
§§ 404.1572(a).  "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less,
or have less responsibility than when you worked before."  *Id.*  "Gainful work activity is work activity that you do for
pay or profit."  20 C.F.R. §§ 404.1572(b).

3

determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

    **B.**    <u>**Standard of Review**</u>

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might

accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

### III.  Analysis

The ALJ determined that Mr. Garcia-Verdecia met the insured status requirements of the Social Security Act through December 31, 2023, and that he had not engaged in substantial gainful activity since his alleged onset date.  Tr. 601.  He found that Mr. Garcia-Verdecia had severe impairments of degenerative disc disease of the cervical, thoracic and lumbar spine, osteoarthritis of the bilateral knees, fibromyalgia, bilateral shoulder tendinopathy, partial thickness tear of the right rotator cuff, obesity, anxiety, major depressive disorder, post-traumatic stress disorder, and somatic symptom disorder with predominant pain.  *Id.*  The ALJ also found that Mr. Garcia-Verdecia had nonsevere impairments of hypertension, hyperlipidemia, gastroesophageal reflux disease, obstructive sleep apnea, insomnia, acute and chronic sinusitis and vitamin D deficiency.  *Id.*  The ALJ determined that Mr. Garcia-Verdecia's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR

Part 404, Subpart P, Appendix 1.  Tr. 601-04.  Accordingly, the ALJ proceeded to step four and found that Mr. Garcia-Verdecia had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations:

> [T]he claimant can lift, carry, push and pull 10 pounds frequently and twenty pounds occasionally; he can stand and/or walk 6 hours in an 8-hour workday; he can sit at least 6 hours in an 8-hour workday; he can perform occasional climbing of ramps and stairs, but can never climb ladders or scaffolds; he can perform occasional balancing (as defined in the SCO), stooping, kneeling, crouching, but never crawling.  The claimant is also limited to frequent bilateral reaching, handling, fingering and feeling.  The claimant is further limited to no exposure to unprotected heights or moving mechanical parts.  The claimant is limited to understanding, remembering, and carrying out simple and detailed, but not complex instructions, making commensurate simple and detailed, but not complex work-related decisions and dealing with changes consistent with simple and detailed, but not complex work setting; and he is capable of maintaining concentration, persistence and pace for at least two-hour intervals over a normal 8-hour workday, 40-hour workweek, with standard breaks.

Tr. 605.  The ALJ determined that considering Mr. Garcia-Verdecia's age, education, work experience, and residual functional capacity, that he was not capable of his past relevant work, but that there are jobs that exist in significant numbers in the national economy that Mr. Garcia-Verdecia can perform.[5]  Tr. 610-11.  The ALJ determined, therefore, that Mr. Garcia-Verdecia was not disabled.  Tr. 611-12.

In support of his Motion, Mr. Garcia-Verdecia argues that the ALJ's RFC is not based on substantial evidence because (1) the ALJ failed to properly assess Mr. Garcia-Verdecia's subjective symptoms and limitations; and (2) the ALJ failed to provide specific and legitimate reasons to discount the medical opinion evidence.

---

[5] The VE expert identified representative occupations of Production Assembler (DOT code 706.687-101, light exertion, unskilled, SVP 2, 288,000 jobs nationally); Housekeeping Cleaner (DOT code 323.687-014, light exertion, unskilled, SVP 2, 126,000 jobs nationally); Routing Clerk (DOT code 222.687-022, light exertion unskilled SVP 2, 50,000 jobs nationally); Document Preparer (DOT code 249.587-018, sedentary exertion, unskilled, SVP 2, 33,000 jobs nationally); Addresser (DOT 209.587-010, sedentary exertion, unskilled, SVP 2, 25,000 jobs nationally); and Stuffer (DOT 731.685-014, sedentary, unskilled, SVP 2, 5,000 jobs nationally).  Tr. 611.

For the reasons discussed below, the Court finds that the ALJ properly considered Mr. Garcia-Verdecia's symptoms pursuant to SSR 16-3p, properly evaluated the medical opinion evidence, and that the RFC is supported by substantial evidence.

**A.     Relevant Medical Evidence**

**1.     UNM Behavioral Health - Lucia D'Arlach, Ph.D.**

On June 30, 2017, Mr. Garcia-Verdecia presented to UNM Behavioral Health and saw Lucia D'Arlach, Ph.D., for "insomnia, severe sleep apnea, lumbar degenerative disc pain, fibromyalgia and [] depression." Tr. 330-31. Mr. Garcia-Verdecia had been referred by his primary care physician. *Id.* On mental status exam, Dr. D'Arlach indicated, *inter alia*, that Mr. Garcia-Verdecia was pleasant, educated, talkative, guilt-ridden, had good judgment and insight, few sources of support, and endorsed depression, chronic pain, and insomnia. *Id.* Dr. D'Arlach diagnosed chronic pain and major depressive disorder, recurrent. *Id.* Dr. D'Arlach introduced hypnosis as a practice to reduce Mr. Garcia-Verdecia's attention to chronic pain and to increase a relaxed state to be able to fall asleep at night. *Id.*

Mr. Garcia-Verdecia had a total of five sessions with Dr. D'Arlach in 2017 and two sessions in 2018. Tr. 325-31, 413-14. Mental status exams were consistent as described above and the sessions were focused on improving sleep hygiene/hypnosis and recognizing and maintaining positive feelings. *Id.*

**2.     UNM Family Medicine – Moon Yoon, M.D.**

On August 10, 2017, Mr. Garcia-Verdecia presented to UNM Family Medicine and saw Moon Yoon, M.D. Tr. 322-24. Mr. Garcia-Verdecia reported a history of major depressive disorder, fibromyalgia, chronic pain, GERD, hypertension, and obstructive sleep apnea on CPAP. *Id.* He reported taking Duloxetine and Pregabalin for fibromyalgia and that he had tried

exercise, physical therapy and stretching without improvement.  *Id.*  He also reported getting counseling with Dr. D'Arlach for depression.  *Id.*  Dr. Yoon's physical exam was unremarkable. *Id.*  Mr. Garcia-Verdecia scored 21/27 on the PHQ-9 self-assessment test for depression.  *Id.* Dr. Yoon assessed major depressive disorder, fibromyalgia, and hypertension.  *Id.*  Dr. Yoon prescribed Fluoxetine for depression and continued Mr. Garcia-Verdecia on his prescribed medications for fibromyalgia and hypertension.  *Id.*

Mr. Garcia-Verdecia saw Dr. Yoon again on September 11, 2017, and February 15, 2018. Tr. 317-22.  On September 11, 2017, Mr. Garcia-Verdecia reported no relief from Fluoxetine, constant fibromyalgia pain, and poor sleep.  Tr. 320.  Dr. Yoon discontinued Fluoxetine and added Memantine to Mr. Garcia-Verdecia's prescribed drug therapy for fibromyalgia.  Tr. 321. On February 15, 2018, Mr. Garcia-Verdecia reported feeling tired every day and having joint pain and headaches.  Tr. 317-18.  Dr. Yoon referred Mr. Garcia-Verdecia to the pain clinic and directed him to follow up with new primary care physician Carlos A. Cano, M.D.  *Id.*

### 3.    UNM Family and Community Medicine – Carlos Cano, M.D.

On April 17, 2018, Mr. Garcia-Verdecia established care with Carlos Cano, M.D., and reported a history of anxiety, depression, hypertension, fibromyalgia and sleep apnea.  Tr. 314-17.  Dr. Cano's physical exam noted, *inter alia,* no acute distress and that neurologically Mr. Garcia-Verdecia was oriented, had no gross neurological deficits, moved extremities appropriately, and that CN 2-12 were grossly intact.  *Id.*  Dr. Cano assessed fibromyalgia and essential hypertension, continued Mr. Garcia-Verdecia on his current medications, and renewed a referral to the pain clinic.  *Id.*

Thereafter, Mr. Garcia-Verdecia saw Dr. Cano approximately every three months throughout 2018, 2019 and 2020 for follow-up care and ongoing treatment related to, *inter alia,*

8

fibromyalgia, insomnia and hypertension.[6]  Tr. 311-13, 385-94, 534-41, 947-54.  Physical exams

were consistently unremarkable as stated above.[7]  *Id.*  Mr. Garcia-Verdecia saw Dr. Cano only

once in 2021 and once in 2022.  Tr. 934-37, 942-44.  On May 9, 2022, Dr. Cano noted on

physical exam that Mr. Garcia-Verdecia had "slowed gait, stiff back.  Tenderness along C-spine,

T-spine and L-spine as well as along paraspinous muscles.  Decreased flexion to spine.  Normal

ROM bilateral upper extremities.  4/5 shoulder abduction bilaterally, 4/5 grip strength bilaterally.

5/5 strength to BLE."  Tr. 938.  Dr. Cano assessed acute worsening chronic back pain.  *Id.*

### 4.      UNM Department of Neurosurgery – Andrea Bliss, PA-C

On December 26, 2018, Mr. Garcia-Verdecia presented to Andrea Bliss, PA-C, to consult

for pain management.  Doc. 410-13.  Mr. Garcia-Verdecia reported a ten-year history of pain and

being diagnosed with fibromyalgia in 2016.  *Id.*  He described body wide pain with headaches

and fatigue due to poor sleep.  *Id.*  On physical exam, PA-C Bliss noted, *inter alia*, "DTRs 2+ to

biceps triceps brachioradialis knees and ankles," and good strength to upper and lower

extremities against resistance, neck has good range of motion.  *Id.*  PA-C Bliss assessed

"[p]atient quite symptomatic despite normal neuromuscular exam."  *Id.*  PA-C Bliss instructed

no change in current medications, provided resources for Tai Chi and Qi Gong, referred

Mr. Garcia-Verdecia for physical therapy, and encouraged full participation in mental health

services.  *Id.*

On April 10, 2019, Mr. Garcia-Verdecia presented to PA-C Bliss for follow up on

fibromyalgia.  Tr. 397-400.  Mr. Garcia-Verdecia reported he tried three or four physical therapy

---

[6] On June 23, 2018, Mr. Garcia-Verdecia reported he was let go from his caregiver job due to his difficulties from
fibromyalgia pain.  Tr. 311.  On September 11, 2018, Mr. Garcia-Verdecia reported looking for jobs "but hasn't found
much."  Tr. 391.  On December 10, 2018, Mr. Garcia-Verdecia reported he was having difficulty finding a job and
was not able to get disability.  Tr. 388.

[7] On January 23, 2020, Dr. Cano noted "T spine tenderness at midline."  Tr. 534.

sessions, but his pain and sleep worsened.[8]  *Id.*  PA-C Bliss assessed that Mr. Garcia-Verdecia

has had the best response with medication therapy of Duloxetine and Lyrica and wrote a new

prescription for those medications.  *Id.*  She also referred him for water-based physical therapy.

*Id.*

On May 17, 2019, Mr. Garcia-Verdecia presented to PA-C Bliss for follow up on

fibromyalgia.  Tr. 474-76.  Mr. Garcia-Verdecia reported being unable to start pool therapy and

that he continued to have a significant amount of pain.  *Id.*  Mr. Garcia-Verdecia requested

assistance with disability paperwork and reported various functional limitations.  *Id.*  PA-C Bliss

assessed that Mr. Garcia-Verdecia's symptoms were interfering with his activities of daily living

and that she did not believe he had the capacity for working at this time.  *Id.*  PA-C Bliss also

indicated that she did not have the expertise to complete a functional capacity evaluation but was

prepared to communicate with Mr. Garcia-Verdecia's attorney.  *Id.*  She directed Mr. Garcia-

Verdecia to continue on his medications and renewed her referral for water-based therapy.  *Id.*

On February 20, 2020, Mr. Garcia-Verdecia presented to PA-C Bliss and reported

dizziness for one month and mid-thoracic back pain.  Tr. 548-51.  On physical exam, PA-C Bliss

noted good flexion of spine without pain, no tenderness palpating iliocostalis muscles along the

thoracic spine, no percussive tenderness over the thoracic or lumbar spine, point tenderness with

deep palpation right at midline over T2, no crepitus with palpation, decent range of motion to his

shoulder but they do hurt with flexion and internal rotation, fingers without clubbing or cyanosis.

Tr. 549.  PA-C Bliss assessed back spasm and prescribed Tizanidine.  *Id.*

---

[8] The Administrative Record contains only one treatment note for physical therapy.  On February 7, 2019, Mr. Garcia-Verdecia presented for an initial physical therapy evaluation for low back pain, fibromyalgia and severe insomnia. Tr. 430-32.  On physical exam, PT Christine Zampach indicated increased lumbar lordosis in standing, increased lateral shift left greater than right in gait, and bilateral paraspinal pain and spasms.  *Id.*  PT Zampach assessed sleep deprivation contributing to global pain, and low back pain secondary to shortened muscles, muscle spasms and poor ability to stabilize pelvic girdle.  *Id.*  She noted that excessive bed rest was contributing to shortened muscles and poor condition.  *Id.*

**5.**    **UNM Pain Management – Mayre Shuttleworth, LPCC**

On February 13, 2019, Mr. Garcia-Verdecia presented to Mayre Shuttleworth, LPCC, to
address pain, depression and sleep issues.  Tr. 405-10.  Mr. Garcia-Verdecia reported pain since
2007 with depression and sleep issues developing sometime thereafter.  *Id.*  Mr. Garcia-Verdecia
completed PHQ-9 and GAD-7 self-assessments.[9]  LPCC Shuttleworth took various histories.[10]
*Id.*  On mental status exam, LPCC Shuttleworth indicated, *inter alia*, easily engaged, teary at
times, organized thought process, normal speech, logical judgment, "in pain and depressed and
tired," fair insight, and some psychomotor activity with left leg shaking or tapping.  *Id.*  LPCC
Shuttleworth assessed that Mr. Garcia-Verdecia was struggling significantly with "pain and
depressive symptoms, sleep issues, and stressors related to financial concerns."  *Id.*  LPCC
Shuttleworth diagnosed major depressive disorder, persistent depressive disorder, somatic
symptom disorder with predominant pain, and generalized anxiety disorder.  *Id.*  She planned to
utilize various therapies to address sleep and pain issues, and to address job development at
Goodwill.  *Id.*

Mr. Garcia-Verdecia saw LPCC Shuttleworth five more times in 2019.  Tr. 402-04, 472-
74, 553-59.  On June 13, 2019, at his fourth session with LPCC Shuttleworth, Mr. Garcia-
Verdecia wanted to address his lack of sleep and talk about employment strategies.  Tr. 472-74.
LPCC Shuttleworth provided Mr. Garcia-Verdecia with information for contacting Goodwill for
job development.  *Id.*  On July 16, 2019, Mr. Garcia-Verdecia wanted to address paperwork for
disability.  *Id.*  Mr. Garcia-Verdecia reported some improvement with sleep and LPCC

---

[9] Mr. Garcia-Verdecia scored 18/27 on the PHQ-9 self-assessment for depression and scored 21/21 on the GAD-7
self-assessment for anxiety.  Tr. 408.

[10] Mr. Garcia-Verdecia reported working as a caregiver, being laid off, being denied disability, and unsuccessfully
trying to find a job.  Tr. 407.

Shuttleworth noted that his general affect was somewhat improved.[11]  *Id.*  On August 20, 2019,

LPCC Shuttleworth indicated "we worked on completing Mr. Garcia-Verdecia's disability

paperwork."  Tr. 553-56.

Mr. Garcia-Verdecia saw LPCC Shuttleworth five times in 2020.  Tr. 551-53, 978-80,

980-82, 982-84, 988-900.  On January 29, 2020, LPCC Shuttleworth indicated that Mr. Garcia-

Verdecia was showing progress related to being able to implement skills from session and has

been able to improve his sleep.  Tr. 552.  On March 2, 2020, LPCC Shuttleworth indicated, *inter*

*alia*, that Mr. Garcia-Verdecia showed progress implementing skills from his sessions and

continued to have better sleep.  Tr. 983-84.  On April 30, 2020, LPCC Shuttleworth indicated

Mr. Garcia-Verdecia was applying skills used to improve sleep to his "daily waking life worries"

as well.  Tr. 988.  On August 11, 2020, LPCC Shuttleworth indicated they were applying

multiple skills to address complaints of pain.  Tr. 981.  On November 20, 2020, LPCC

Shuttleworth noted that Mr. Garcia-Verdecia "continues to do extremely well with skill

development" to address pain and anxiety.  Tr. 979.

Mr. Garcia-Verdecia saw LPCC Shuttleworth once in 2021.  Tr. 976-78.  On January 11,

2021, LPCC Shuttleworth noted that Mr. Garcia-Verdecia continued to do extremely well with

self-regulation skill development.  Tr. 977.

### 6.   **Optum Rheumatology – Jaren Trost, M.D.**

On February 24, 2021, Mr. Garcia-Verdecia presented to Jaren Trost, M.D., to establish

care for fibromyalgia.  Tr. 900-06.  Dr. Trost indicated he wanted to confirm the diagnosis.  *Id.*

Dr. Trost's physical exam was unremarkable, and he indicated no synovitis and a low suspicion

---

[11] Mr. Garcia-Verdecia scored 23/27 on the PHQ-9 self-assessment for depression and scored 21/21 on the GAD-7 self-assessment for anxiety.  Tr. 557.

for inflammatory arthritis.  *Id.*  Dr. Trost recommended a vigorous anti-fibromyalgia regimen and referred Mr. Garcia-Verdecia to Dr. Manole for pain management.  *Id.*

Mr. Garcia-Verdecia saw Dr. Trost again on June 15, 2021, November 2, 2021, and March 31, 2022.  Tr. 907-11, 912-15, 916-19.  Dr. Trost indicated that Mr. Garcia-Verdecia did not have findings suggestive of an inflammatory etiology, was no longer taking Duloxetine and Lyrica for fibromyalgia, and had been referred to Dr. Manole for management.  Tr. 907, 912.  On March 31, 2022, Dr. Trost indicated that Mr. Garcia-Verdecia reported starting a movement program with core and overall strength focus, and that he had seen Dr. Manole and reported feeling a little better but still in pain.  Tr. 916.

**B.      Medical Opinion Evidence**

**1.      State Agency Nonexamining Consultants**

**a.      Richard Sorensen, Ph.D.**

On August 31, 2018, nonexamining State agency psychological consultant Richard Sorensen, Ph.D., reviewed the medical evidence record at the initial stage of Mr. Garcia-Verdecia's disability claim.  Tr. 79-80.  Dr. Sorensen prepared a Psychiatric Review Technique and rated the degree of Mr. Garcia-Verdecia's mental impairments in the area of understanding, remembering, or applying information as *none*; in the area of interacting with others as *mild*; in the area of maintaining concentration, persistence and pace as *mild*; and in the area of adapting as *none*.  *Id.*  Dr. Sorensen explained that Mr. Garcia-Verdecia "has been on meds for depression and anxiety which appears entirely situational[.]  Recent MSEs are all WNL[.]  His primary limitation appears physical.  Any psych limitations appear non-severe at this time."  *Id.*  Dr. Sorensen did not prepare a Mental Residual Functional Capacity Assessment.

b.    **Shabnam Rehman, M.D.**

On October 30, 2018, nonexamining State agency medical consultant Shabnam Rehman,

M.D., reviewed the medical evidence record at the initial stage of Mr. Garcia-Verdecia's

disability claim.  Tr. 82-83.  Dr. Rehman assessed that Mr. Garcia-Verdecia could perform a full

range of medium work.[12]  Dr. Rehman explained

> [t]he medical evidence supports MDI of mild DDD in L-Spine, OSA, HTN, and
> obesity.  At recent physical CE the claimant was not in distress, had no edema, aox4,
> normal speech and memory.  His strength was 5/5, SLR negative bilat, and had
> normal ROM in all areas.  CE provider opinioned the claimant had normal gait and
> no ADs used.  The claimant was able to get out of chair, on/off exam table
> squat/recover w/o any difficulty.  He could walk on toes, heels and complete tandem
> walk.  There are no physical limitations noted from provider.  Provider's opinion is
> recent, consistent and supported.  The claimant is being treated with CPAP for OSA,
> he takes rx med for FM sxs, and HTN which appears well managed.
>
> Per function and reported to CE provider: He is able to care for his personal needs,
> makes meals, completes light hh chores, drives, uses computer to shop, and is able
> to maintain finances.  Reports he cannot walk, however, at CE appointment, his gait
> was normal and no ADs were used.  The claimant's statements concerning the
> intensity, persistence & limiting effects of these symptoms are not fully consistent
> with the EOR.

Tr. 83.

c.    **Laura Lochner, Ph.D.**

On April 18, 2019, nonexamining State agency psychological consultant Laura Lochner,

Ph.D., reviewed the medical evidence record at reconsideration.  Tr. 94-95.  She noted that

Mr. Garcia-Verdecia reported his conditions were progressively worsening as of October 2018,

but that no new medical evidence record was received.  *Id.*  She assessed that Mr. Garcia-

Verdecia had no greater than mild limitations to functioning and had not substantiated a more

restricted determination.  *Id.*

---

[12] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(c).

### d.   Mary Lanette Rees, M.D.

On April 25, 2019, nonexamining State agency medical consultant reviewed the medical evidence record at reconsideration.  Tr. 96-98.  She noted that Mr. Garcia-Verdecia reported his conditions were progressively worsening as of October 2018, but that no new medical evidence record was received.  *Id.*  Dr. Rees assessed that a review of all the evidence did not substantiate a more restricted determination.  *Id.*

The ALJ found the nonexamining State agency consultant assessments unpersuasive.  Tr. 607.  He explained that the psychological consultants failed to assess any limitations based on Mr. Garcia-Verdecia's severe impairments of depression and anxiety, and that since these assessments were completed, the record also contained evidence of new physical impairments that undermine a residual functional capacity for medium exertion.  *Id.*

### 2.   Consultative Examiners and Treating Physicians

### a.   Athanasios Manole, M.D.

### (1)   October 5, 2018

On October 5, 2018, Mr. Garcia-Verdecia presented to Athanasios Manole, M.D., for a consultative evaluation of his ability to do work-related physical activities.  Tr. 362-68. Mr. Garcia-Verdecia reported impairments of sleep apnea, fibromyalgia, depression, hypertension, and anxiety.  Tr. 362.  Mr. Garcia-Verdecia reported symptoms of pain, insomnia, fatigue, memory loss, trouble concentrating, dizziness, headaches, stiffness in joints, numbness in legs and feet, and cramps.  Tr. 363.  Mr. Garcia-Verdecia reported being able to sit for one hour, stand for one hour, cannot walk any distance, and lift 10 pounds.  *Id.*  Mr. Garcia-Verdecia reported his daily activities consisted of resting.  *Id.*

Dr. Manole observed that Mr. Garcia-Verdecia appeared his stated age, was in no acute distress, was tall and appeared healthy, and had a normal gait with walking.  *Id.*  Dr. Manole performed a thorough physical exam and assessed that

> on examination, the claimant had preserved strength.  5/5 in all extremities.  He had full range of motion.  His sensation was intact throughout.  The claimant was able to lift, carry and handle light objects.  Claimant was able to squat and rise from that position with ease.  Claimant was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table.  The claimant was able to walk on heels and toes.  Tandem walking was normal and claimant could hop on one foot bilaterally.

Tr. 367.  Dr. Manole additionally observed (1) that Mr. Garcia-Verdecia did not appear fatigued during the examination and had no physical manifestations of chronic hypoxemia; (2) that Mr. Garcia-Verdecia had no significant physical abnormalities or limitations on examination related to fibromyalgia; (3) that he had no significant abnormalities noted on examination in relation to hypertension; and (4) that Mr. Garcia-Verdecia exhibited normal behavior and cognitive function during the examination.  *Id.*

Dr. Manole assessed that Mr. Garcia-Verdecia had no functional limitations in his ability to do work-related physical activities.  Tr. 368.

### (2)    July 13, 2022

On July 13, 2022, Dr. Manole prepared a *Physical Residual Functional Capacity Questionnaire* on Mr. Garcia-Verdecia's behalf.  Tr. 895-99.  He represented that he had been treating Mr. Garcia-Verdecia monthly since November 22, 2021.[13]  *Id.*  He listed diagnoses of lumbar and cervical degenerative disc disease, bilateral knee osteoarthritis, fibromyalgia, and

---

[13] The Administrative Record does not contain any treatment notes prepared by Dr. Manole.  Dr. Trost's treatment notes indicate that on November 2, 2021, he referred Mr. Garcia-Verdecia to Dr. Manole for pain management.  Tr. 912-15.

bilateral shoulder tendinopathy; assessed prognosis as fair; and identified symptoms of pain and fatigue. *Id.* Dr. Manole indicated that Mr. Garcia-Verdecia's symptoms were severe enough to frequently interfere with the attention and concentration needed to perform even simple work tasks and that Mr. Garcia-Verdecia was capable of low stress jobs. *Id.*

Dr. Manole assessed that *beginning in November 2021*, Mr. Garcia-Verdecia could walk one block without rest or severe pain; sit for 30 minutes at one time; stand for 10 minutes at one time; stand/walk for less than 2 hours in a workday; sit for at least 6 hours total in a workday; required periods of walking and shifting of positions with occasional unscheduled breaks during the workday; could frequently lift/carry less than 10 pounds; rarely lift/carry 20 pounds; could frequently look down, turn head right or left, look up and hold head in static position; could occasionally twist; could rarely stoop/crouch/squat; and could never climb ladders or stairs. *Id.* Dr. Manole assessed that Mr. Verdecia had no limitations in reaching, handling or fingering. *Id.* Finally, Dr. Manole assessed that Mr. Garcia-Verdecia would likely have good and bad days and be absent from work about three days per month because of his impairments. *Id.*

The ALJ found that both of Dr. Manole's assessments were poorly supported, *i.e.,* in one finding Mr. Garcia-Verdecia had no physical impairments at all while in the other finding that Mr. Garcia-Verdecia's physical impairments limited him to less than sedentary work. Tr. 608. The ALJ explained that while the medical evidence record does note "evidence of degenerative changes, osteoarthritis, tendinopathy and fibromyalgia with trigger points, tenderness, decreased range of shoulder motion, positive empty can test, lumbar lordosis with standing, pain with strength testing, thoracic tenderness, spasms and an antalgic gait," it more generally notes that claimant had normal strength, reflexes and gait. *Id.* The ALJ found the medical evidence record to be inconsistent with both of Dr. Manole's assessments. *Id.*

b.      **Andrea Bliss, PA-C**

On May 17, 2019, Mr. Garcia-Verdecia reported various functional limitations to PA-C Bliss and requested her assistance with completing disability paperwork.  Tr. 474.  PA-C Bliss indicated that Mr. Garcia-Verdecia's symptoms were interfering with his activities of daily living and that she did not believe he had the capacity for working at this time.  *Id.*  PA-C Bliss also indicated that she did not have the expertise to complete a functional capacity evaluation but was prepared to communicate with Mr. Garcia-Verdecia's attorney.  *Id.*

The ALJ found PA-C Bliss's opinion unpersuasive.  Tr. 609.  He explained that PA-C Bliss indicated she did not have the expertise to fill out a functional capacity evaluation, that her statement regarding Mr. Garcia-Verdecia's capacity for work was conclusory, and that she failed to indicate functional limitations.  *Id.*  The ALJ further found that treatment notes in the record as a whole generally noted that Mr. Garcia-Verdecia was "pleasant and cooperative with normal attention, normal concentration, normal behavior, fair insight, fair judgment, normal memory, normal thought processes, normal fund of knowledge and normal cognitive functioning."  *Id.*

c.      **Mayre Shuttleworth, LPCC**

On August 20, 2019, LPCC Shuttleworth completed a *Mental Residual Functional Capacity Questionnaire* on Mr. Garcia-Verdecia's behalf.[14]  Tr. 60-64.  She represented that she started treating Mr. Garcia-Verdecia in February 2019 and has had six sessions; that his medications cause fatigue, drowsiness, and headaches; and that his symptoms include anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with weight change, decreased energy, feelings of guilt or worthlessness, generalized persistent anxiety, mood

---

[14] LPCC Shuttleworth indicated that she and Mr. Garcia-Verdecia prepared this together.  She noted that "[i]t seemed very useful to work together on the disability paperwork to make sure that we both agree on the assessment.  He seemed to very reasonably rate himself with regard to his limitations and abilities."  Tr. 554.

disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, psychomotor agitation, persistent disturbances of mood or affect, apprehensive expectation; emotional withdrawal or isolation, motor tension, emotional lability, vigilance and scanning, autonomic hyperactivity, memory impairment – short term, and sleep disturbance.  Tr. 61.

As for Mr. Garcia-Verdecia's ability to do unskilled work, she assessed that he has *an unlimited or very good ability* to (1) carry out very short and simple instructions, (2) ask simple questions or request assistance, and (3) be aware of normal hazards and take appropriate precautions; *a limited but satisfactory ability* to (1) remember work-like procedures, (2) understand and remember very short and simple instructions, (3) sustain an ordinary routine without special supervision, (4) accept instructions and respond appropriately to criticism from supervisors, and (5) respond appropriately to changes in a routine work setting; is *seriously limited, but not precluded from* (1) maintaining regular attendance and being punctual within customary, usually strict tolerances, (2) working in coordination with or proximity to others without being unduly distracted, and (3) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; is *unable to meet competitive standards for* (1) maintaining attention for two hour segment, (2) making simple work-related decisions, (3) completing a normal workday and workweek without interruptions from psychologically based symptoms, and (4) performing at a consistent pace without an unreasonable number and length of rest periods; and *has no useful ability to function* when dealing with normal work stress.  Tr. 62.  LPCC Shuttleworth explained that Mr. Garcia-Verdecia's psychiatric condition and stress exacerbates his pain and insomnia.  Tr. 63.  She estimated that Mr. Garcia-Verdecia

would miss work more than four days per month because of his mental impairments and treatment.  *Id.*  She explained that

> [h]e would have significant difficulty with being able to maintain attention, make decisions, manage stress, attend work regularly and interact with others due to his medical diagnosis of fibromyalgia and psychological diagnoses of post-traumatic stress disorder and major depressive disorder.

Tr. 62.  Finally, LPCC Shuttleworth stated that Mr. Garcia-Verdecia has had longstanding pain since 2007 and that his last date of work with much difficulty was May 2018.  Tr. 64.

The ALJ found LPCC Shuttleworth's opinion unpersuasive.  Tr. 608.  He explained that at the time she completed the form she had only seen Mr. Garcia-Verdecia for six visits and that subsequent and later treatment notes indicated improvement.  *Id.*  He also explained that LPCC Shuttleworth noted that she completed the assessment with Mr. Garcia-Verdecia's help and, therefore, it does not support that she made independent findings.  *Id.*  Finally, the ALJ explained that other treatment notes do not support such severe limitations because Mr. Garcia-Verdecia was generally noted as being "pleasant and cooperative with normal attention, normal concentration, normal behavior, fair insight, fair judgment, normal memory, normal thought process, normal fund of knowledge and normal cognitive functioning[.]"  *Id.*

### d.    Carlos Cano, M.D.

On June 2, 2019, treating physician Dr. Cano prepared his first of three "To Whom It May Concern" letters on Mr. Garcia-Verdecia's behalf.  Tr. 520.  Dr. Cano represented that "I have filled out the first sheet of the documents contained however as providers we do not do the physical assessment for these types of evaluations as it is usually a Physical or Occupational therapist that would evaluate for functional assessments."  *Id.*

On May 5, 2022, in his second "To Whom It May Concern" letter, Dr. Cano represented

I am writing on behalf of the above mentioned patient, whom I care for at the UNM North Valley Center for Family and Community Health.   I am Mr. Garcia-[V]erdecia's primary care physician.  I am writing to inform the reader that because of the debilitating chronic conditions that this patient has he is not able to work. Please feel free to contact the clinic if you have any further questions or concerns.

Tr. 1067.

On July 11, 2022, in his third "To Whom It May Concern" letter, Dr. Cano represented

I am writing on behalf of the above mentioned patient, whom I care for at the UNM North Valley Center for Family and Community Health.  I am his primary care physician.  I am writing to communicate that patient has a very severe form of fibromyalgia which does not allow him to perform work duties.  Any type of physical exertion causes Mr. Garcia-Verdecia significant pain flares that can last for a prolonged time.  In the time since I have met him he has been compliant with all treatment but his chronic condition remains severe and he remains unable to work.  He additionally has significant anxiety and depression which he is also being treated for.  Unfortunately, these conditions make it even harder for him to be able to complete any work duties.  Please feel free to contact the clinic if you have any further questions or concerns.

Tr. 880.

Also on July 11, 2022, Dr. Cano completed a *Physical Residual Functional Capacity Questionnaire* on Mr. Garcia-Verdecia's behalf.  Tr. 882-86.  Dr. Cano represented that (1) he had treated Mr. Garcia-Verdecia for three years and diagnosed fibromyalgia, chronic back pain, and depression; (2) symptoms included pain in back, shoulders, hand joints, and knees, as well as fatigue and depression; (3) clinical and objective signs demonstrated physical therapy had worsened pain, arthritis and tears were present in shoulder, and cervical spine has moderate stenosis; (4) treatment included physical therapy, Naproxen, Tizanidine, Hydroxyzine, Pregabalin and Duloxetine; (5) impairments have or can be expected to last at least twelve months; (6) Mr. Garcia-Verdecia was not a malingerer; (7) depression contributed to his symptoms and functional limitations; (7) impairments were consistent with symptoms and functional limitations described; (8) pain and/or other symptoms would interfere constantly with

attention and concentration for even simple work tasks; and (9) Mr. Garcia-Verdecia was incapable of even "low stress" jobs.  Tr. 882-83.

Dr. Cano assessed that Mr. Garcia-Verdecia could walk one city block without rest or severe pain; could sit for 15 minutes at one time; could stand for 20 minutes at one time; could sit and stand/walk for less than 2 hours in an 8-hour workday; required unscheduled 30 minute breaks every 20 minutes; could rarely lift or carry less than 10 pounds; could rarely look down or up or hold head in a static position and could never turn his head right or left; could never twist, bend, crouch/squat, climb ladders or stairs; and had significant limitations with handling and fingering.  Tr. 883-85.  Dr. Cano represented that the earliest date Mr. Garcia-Verdecia's symptoms and limitations applied was 2007.  Tr. 885.

The ALJ found Dr. Cano's opinions unpersuasive.  Tr. 609.  The ALJ explained that Dr. Cano overstated Mr. Garcia-Verdecia's limitations and that they were inconsistent with the longitudinal medical evidence, which noted Mr. Garcia-Verdecia as generally having "normal attention, normal concentration, normal behavior, normal judgment, normal insight, normal cognitive functioning, normal strength and a normal gait."  *Id.*  The ALJ further explained that Dr. Cano's determination that Mr. Garcia-Verdecia's limitations have been disabling since 2007 further undermined its persuasiveness given that Mr. Garcia-Verdecia worked at substantial gainful activity until 2018.  *Id.*  Last, the ALJ explained that Dr. Cano's "To Whom It May Concern" letters failed to offer functional limitations and instead opined on an issue reserved to the Commissioner.  *Id.*

### e.      Elizabeth Richardson, M.D.

On March 25, 2022, Mr. Garcia-Verdecia presented to examining State agency psychologist consultant Elizabeth Richardson for evaluation.  Tr. 871-76.  Mr. Garcia-Verdecia

reported depression and anxiety since childhood that was exacerbated in 2016 and 2017.  *Id.*  He

reported daily activities of laying around, interacting with his elementary school-aged daughter,

occasionally going outside with family members to assist with photography, and overall poor

social functioning.  *Id.*  Mr. Garcia-Verdecia reported requiring partial assistance with dressing

and transportation, and full assistance with meal preparation, shopping, housework, and taking

medications.  *Id.*

On mental status exam, Dr. Richardson indicated Mr. Garcia-Verdecia was dressed

appropriately with good grooming and hygiene; had inappropriate avoidant eye contact; observable

psychomotor agitation of foot tapping and picking and chewing at nails; was cooperative and

pleasant; had spontaneous and normal rate, rhythm and tone of speech; reported being "down and

anxious"; mood was dysthymic, congruent, and restricted range affect becoming tearful at times

during interview; had tangential thought process; no noted flight of ideas or loosening of

associations; had adequate attention and concentration to encounter, no distractibility noted; recent

and remote memory grossly intact; fund of knowledge adequate for age and level of education;

insight fair; judgment fair; and quality of interview good.  *Id.*

Dr. Richardson administered the Mini Mental State Exam which suggested no neurocognitive

impairment.  *Id.*

Dr. Richardson diagnosed depressive disorder due to another medical condition with

depressive features (chronic pain); and unspecified trauma - and stressor - related disorder.  *Id.*

Dr. Richardson assessed that

> [t]he claimant presents with symptoms suggestive of above diagnosis and did not
> meet criteria for major depressive disorder or PTSD.  The prognosis is fair given
> the claimant's problems with pain with subsequent anxiety and depressed mood in
> the setting of uncontrolled pain.  It should be noted, claimant without grimacing
> and only visible psychomotor agitation.
>
> The claimant would likely benefit from engagement in individual therapy to help
> process difficult emotions and develop coping strategies.  Also, the claimant would

benefit from continuation of anti-depressant and anti-anxiety medication as well as possible augmentation if depressive symptoms worsen in the future.

The claimant is likely to experience moderate impairment in the ability to understand and carry out simple and complex instructions, as well as concentrate, related to their current symptoms of uncontrolled pain.

The claimant is unable to interact appropriately with supervisors, coworkers, or the public because of uncontrolled pain and subsequent poor concentration. The claimant would likely require some supervision at any type of work-related activity.

Additionally, the claimant is likely to have difficulty persisting at tasks and being a dependable employee given the degree of uncontrolled pain and inconsistent transportation.

There does not appear to be substance abuse contributing to the claimant's presentation. The claimant appears to be able to manage their own finances.

Tr. 875.  Dr. Richardson then completed a table of "Abilities" wherein she indicated Mr. Garcia-Verdecia had *mild limitations* in his ability to understand and remember simple instructions; *moderate limitations* in his ability to understand and remember complex instructions; *mild limitations* in his ability to socially interact; *mild limitations* in his ability to concentrate and complete tasks; and *mild to no limitations* in ability to adapt.  Tr. 875-76.

Dr. Richardson also completed a separate *Medical Statement of Ability To Do Work-Related Activities (Mental)* form and similarly assessed that Mr. Garcia-Verdecia had *mild limitations* in his ability to (1) understand and remember simple instructions; (2) carry out simply instructions; (3) make judgments on simple work-related decisions; (4) understand and remember complex instructions; (5) interact appropriately with the public; (6) interact appropriately with supervisor(s); (7) interact appropriately with co-workers; and (8) respond appropriately to usual work situations and to changes in a routine work setting.  Tr. 877-78.  She assessed that Mr. Garcia-Verdecia had *moderate limitations* in his ability to (1) carry out complex instructions; and (2) make judgments on complex work-related decisions.  *Id.*  She

noted that Mr. Garcia-Verdecia had appropriately interacted at the clinic and with her, and that

his capability of concentration and persistence would be affected if pain were not controlled.  *Id.*

The ALJ found Dr. Richardson's opinion persuasive "that the claimant had only some

moderate limitations with complex instructions, decisions and judgments[.]"  Tr. 608.  The ALJ

found that this opinion was consistent with the treatment notes that generally indicated

Mr. Garcia-Verdecia as being "pleasant and cooperative with normal attention, normal

concentration, normal behavior, fair insight, fair judgment, normal memory, normal thought

processes, normal fund of knowledge and normal cognitive functioning[.]"  *Id.*  The ALJ found

that Dr. Richardson's assessments based on uncontrolled pain were conjecture because she noted

Mr. Garcia-Verdecia appeared relatively pain free during the examination.  *Id.*

C.      **Legal Standards**

1.      **RFC Assessment**

Assessing a claimant's RFC is an administrative determination left solely to the

Commissioner "based on the entire case record, including objective medical findings and the

credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71

(10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law

judge hearing level or at the Appeals Council review level, the administrative law judge or the

administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual

functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an

administrative finding).[15]  In assessing a claimant's RFC, the ALJ must consider the combined

---

[15] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.  Mr. Chavez filed his claim on April 18, 2016.  Tr. 385-89.

effect of all of the claimant's medically determinable impairments, and review all of the
evidence in the record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R.
§§ 404.1545(a)(2) and (3), 416.945(a)(2).  If the RFC assessment conflicts with an opinion from
a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL
374184 at *7.   Further, the ALJ's "RFC assessment must include a narrative discussion
describing how the evidence supports each conclusion, citing specific medical facts . . . and
nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).
When the ALJ fails to provide a narrative discussion describing how the evidence supports each
conclusion with citations to specific medical facts and nonmedical evidence, the court will
conclude that the ALJ's RFC assessment is not supported by substantial evidence.  *See Southard
v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently
articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173,
177-78 (10th Cir. 2003) (unpublished).

## 2.   <u>Evaluating Symptoms</u>

When evaluating a claimant's symptoms, the ALJ must use the two-step framework set
forth in 20 C.F.R. § 404.1529.  First, the ALJ must determine whether objective medical
evidence presents a "medically determinable impairment" that could reasonably be expected to
produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b).  Second, after finding a
medically determinable impairment, the ALJ must assess the intensity and persistence of the
alleged symptoms to determine how they affect the claimant's ability to work and whether the
claimant is disabled. 20 C.F.R. § 404.1529(c).  At the second step, the ALJ considers "all of the
available evidence" about how symptoms affect the claimant—including a claimant's statements
about the intensity, persistence, and limiting effects of her symptoms; the objective medical

evidence; information from medical sources about the claimant's pain or other symptoms; and

information from nonmedical sources about the claimant's pain or other symptoms. *Id.*  The ALJ

considers a non-exhaustive list of factors provided in 20 C.F.R. § 404.1529(c)(3), which include:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.,* lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*See also* SSR 16-3p, 2017 WL 5180304 at *7-8.  "The RFC assessment must include a

discussion of why reported symptom-related functional limitations and restrictions can or cannot

reasonably be accepted as consistent with the medical and other evidence."  SSR 96-8p, 1996

WL 374184, at *7 (July 2, 1996).

In evaluating a claimant's subjective symptom evidence and other matters, an ALJ must

discuss not only "the evidence supporting [her] decision," but also "the uncontroverted evidence

he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v.*

*Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).  Along these lines, "[i]t is improper for the ALJ

to pick and choose among medical reports, using portions of evidence favorable to his position

while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008)

(quotation and citation omitted).  Likewise, an ALJ is not permitted to "mischaracterize or

downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand. *See, e.g., Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

### 3.   **Medical Opinion Evidence**

The ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (*i.e.,* how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he/she is opining; and (5) any other factor tending to support or contradict the opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the most crucial factors.  20 C.F.R. § 404.1520c(b)(2).  And, importantly, an ALJ is not required to articulate how the other (less important) factors played into his finding on an opinion's persuasiveness.  *Id.* ("We may, *but are not required to*, explain how we considered the factors in paragraphs (c)(3) through (7) of this section, as appropriate, when we articulate how we considered the medical opinions and prior administrative medical findings from acceptable medical sources in your case record." (emphasis added)).  An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. § 404.1520c(a).

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  The ALJ need not discuss each factor articulated in the regulations; rather, the ALJ must merely explain his

weighing decision with sufficient specificity so as to be capable of review. *See Langley*, 373

F.3d at 1119.  Put differently, if the ALJ rejects an opinion, he "must then give 'specific,

legitimate, reasons for doing so.' " *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th

Cir. 2003)).

### D.    Subjective Complaints

Mr. Garcia-Verdecia testified that he could no longer work due to the chronic pain,

fatigue, and difficulty concentrating related to his multiple physical and mental impairments.

Tr. 601, 605, 631-32, 649-50.

In evaluating Mr. Garcia-Verdecia's symptoms of pain, fatigue and poor concentration

pursuant to SSR 16-3p, the ALJ determined Mr. Garcia-Verdecia's allegations were generally

inconsistent with the record.  The ALJ explained that

> [t]he claimant testified that he was generally home bound and reliant on his son as
> his caretaker with him isolating in his room during periods of depression.  However,
> the claimant reported that he was looking for work in 2018 and 2019 (Exhibit 4F/23,
> 39).  As to his mental health, his providers noted some improved engagement and
> less upset by February 2020 (Exhibit 7F/26-29; 16F/6).  This is further supported
> by the findings of the mental consultative examiner, who noted the claimant in
> March 2022 with generally only mild limitations, except with complex instruction
> (Exhibit 12F/4-5).  Finally, his more recent treatment notes indicated that he had
> even stopped his medication treatment for his fibromyalgia with indications he
> would benefit by becoming more active, which is inconsistent with his own
> statements of being reliant on his son to care for him (Exhibit 16F/13).

Tr. 609.

Mr. Garcia-Verdecia argues that the ALJ failed to consider the entire case record, cherry

picked through the evidence, and mischaracterized the evidence he relied on to find that

Mr. Garcia-Verdecia's alleged symptoms were not fully consistent with the evidence of record.

Doc. 20 at 5-8.  For instance, Mr. Garcia-Verdecia argues that the ALJ failed to consider the

reasons Mr. Garcia-Verdecia was looking for work in 2018 and 2019; failed to consider the

entirety of the March 2022 mental consultative examiner's findings; and failed to note that it was Mr. Garcia-Verdecia's rheumatologist who advised him to stop his fibromyalgia medication, referred him to a pain/spine doctor, and advised him to start a movement program with core and overall strength focus. *Id.* Mr. Garcia-Verdecia further argues the ALJ failed to consider his persistent attempts to find relief from pain and the objective findings that support his reports of ongoing pain. *Id.* Finally, Mr. Garcia-Verdecia argues that the ALJ's failure to do so is not harmless error because the Vocational Expert testified that the need to be off task more than 15% of the workday for any reason is work preclusive. *Id.* For these reasons, Mr. Garcia-Verdecia argues that remand is required for proper consideration of his subjective reports of pain and fatigue. Doc. 27 at 1-2.

The Commissioner asserts that the ALJ "reasonably evaluated Plaintiff's allegations regarding mental conditions," and that Mr. Garcia-Verdecia is improperly asking the Court to reweigh the evidence. Doc. 26 at 6-12. The Commissioner asserts that the ALJ acknowledged abnormal findings on mental status exams but found that the evidence also showed Mr. Garcia-Verdecia was "engaged, alert, and had normal memory, attention, concentration, and cognitive functioning." *Id.* The Commissioner further asserts that the ALJ incorporated limitations into the mental RFC to account for consultative examiner Elizabeth Richardson, M.D.'s concerns that Mr. Garcia-Verdecia's pain could affect his ability to concentrate. *Id.*

Here, the ALJ determined that Mr. Garcia-Verdecia's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 606. Relevant to SSR 16-3p and 20 C.F.R. § 404.1529(c)(3), the ALJ discussed Mr. Garcia-

Verdecia's hearing testimony and reported functional limitations related to his chronic pain and mental impairments. Tr. 605-06. The ALJ discussed Mr. Garcia-Verdecia's testimony regarding his poor sleep, limited motivation and poor concentration, and that he isolates during periods of depression. *Id.* The ALJ discussed the medical evidence record related to Mr. Garcia-Verdecia's severe impairments, including Mr. Garcia-Verdecia's reported symptoms, physical and mental status exam findings, diagnostic impressions, and diagnoses and treatments. Tr. 606-07. Additionally, the ALJ explained his consideration of Mr. Garcia-Verdecia's alleged symptoms when making his RFC determination as follows:

> More specifically, the claimant was limited to occasional balancing (as defined in the SCO), stooping, kneeling, crouching, but never crawling or climbing ladders, ropes or scaffolds, based on evidence of obesity, trigger points, tenderness, decreased range of motion in shoulder, thoracic and lumbar spine, positive empty can test, lumbar lordosis with standing, pain with strength testing, thoracic tenderness, spasms and an antalgic gait. The claimant was limited to frequent bilateral reaching, handling, fingering and feeling, based on evidence of decreased shoulder range of motion, shoulder tenderness and positive empty can test with some reports of hand numbness. The claimant was limited to no exposure to unprotected heights or moving mechanical parts, based on evidence of obesity, trigger points, tenderness, decreased range of motion in shoulder, thoracic and lumbar spine, positive empty can test, lumbar lordosis with standing, pain with strength testing, thoracic tenderness, spasms and an antalgic gait. The claimant was limited to understanding, remembering, and carrying out simple and detailed, but not complex instructions, making commensurate simple and detailed, but not complex work-related decisions and dealing with changes consistent with a simple and detailed, but not complex work setting, based on evidence of tangential thoughts, limited recall and concerns pain could affect his concentration, but with him noted as engaged and alert with normal memory, normal attention, normal concentration and normal cognitive functioning. Furthermore, with his generally normal attention and concentration, the claimant would be capable of maintaining concentration, persistence and pace for at least two-hour intervals over a normal 8-hour workday, 40-hour workweek, with standard breaks. Accordingly, the undersigned finds that the residual functional capacity is consistent with the evidence.

Tr. 610.  The Court, therefore, finds that the ALJ considered all of the evidence as he was required to do and assessed limitations in Mr. Garcia-Verdecia's ability to do work-related physical and mental activities that accounted for Mr. Garcia-Verdecia's alleged symptoms.

Further, the ALJ's explanations for finding Mr. Garcia-Verdecia's statements inconsistent with the record are supported by substantial evidence.  For instance, on September 11, 2018, Mr. Garcia-Verdecia reported to Dr. Cano he was looking for jobs "but hasn't found much."  Tr. 391.  Three months later, on December 10, 2018, Mr. Garcia-Verdecia reported to Dr. Cano he was having difficulty finding a job and was not able to get disability.  Tr. 388.  Two months later, on February 13, 2019, Mr. Garcia-Verdecia reported to LPCC Shuttleworth he had been laid off the previous year and was trying to find a job without success.  Tr. 407.  She planned to explore with him job development at Goodwill.  Tr. 409.  Four months later, on June 13, 2019, Mr. Garcia-Verdecia wanted to talk with LPCC Shuttleworth about employment strategies and she provided him with information for contacting Goodwill for job development.  Tr. 409, 474.  Mr. Garcia-Verdecia argues the ALJ's explanation fails to take into account that he lost his job due to difficulties from fibromyalgia and that he was seeking work due to great financial distress.  Doc. 20 at 6.  However, the fact that Mr. Garcia-Verdecia actively sought employment while maintaining he suffered from disabling pain is a legitimate basis for finding an inconsistency between his alleged symptoms and the record.  *See Vigil v. Colvin*, 623 F. App'x 936, 939 (10th Cir. 2015) (unpublished) (finding that a claimant looking for jobs while alleging disabling pain is a legitimate ground for the ALJ to discount credibility); *cf. Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (observing that claimant's interest in returning to work during the period when she was allegedly disabled supported ALJ's adverse credibility finding).

The record also supports that Mr. Garcia-Verdecia showed improved engagement and being less upset by February 2020.  For example, the ALJ noted and the record supports that on January 29, 2020, LPCC Shuttleworth noted that Mr. Garcia-Verdecia was "very engaged" in session, his affect was "somewhat improved and broadened," he was "showing progress related to being able to implement skills from session," and that he noted "significant improvement in his sleep."  Tr. 551-52.  The ALJ also noted and the record supports that in 2021, Dr. Trost's treatment notes indicated that when asked Mr. Garcia-Verdecia reported no anxiety/depression or sleep issues, and that on physical exam Dr. Trost noted normal cognition and no depression.  Tr. 905, 910, 915.  Mr. Garcia-Verdecia argues these findings fail to support improved symptoms because Dr. Trost was not treating Mr. Garcia-Verdecia for mental health issues.  Doc. 20 at 6. This argument, however, ignores that the ALJ cites LPCC Shuttleworth's treatment notes, who was treating Mr. Garcia-Verdecia for mental health issues and related pain.  Further, LPCC Shuttleworth's one treatment note in 2021, when Mr. Garcia-Verdecia last saw her or any mental healthcare provider, indicated he "continued to do extremely well with self-regulation skill development."  Tr. 977.

The ALJ also accurately notes that consultative examiner Dr. Richardson completed an assessment of Mr. Garcia-Verdecia's ability to do work-related mental activities and assessed that he had mostly mild limitations in his ability to do work-related mental activities except for his ability to carry out complex instructions or make judgment on complex work-related decisions.  Tr. 877-78.  Mr. Garcia-Verdecia argues, however, that the ALJ ignored Dr. Richardson narrative explanation that is consistent with Mr. Garcia-Verdecia's alleged symptoms, *i.e.,* that he is unable to interact appropriately with supervisors, coworkers or the public because of uncontrolled pain and subsequent poor concentration, and that uncontrolled

pain and inconsistent transportation would cause difficulty persisting at tasks and being a dependable employee.  Doc. 20 at 6.  The ALJ, however, did not ignore Dr. Richardson's narrative regarding greater limitations "in a setting of uncontrolled pain," but instead found them to be conjecture since Dr. Richardson specifically noted that Mr. Garcia-Verdecia was not grimacing during the exam, showed only visible psychomotor agitation, appropriately interacted at the clinic and with her, and had stood up only once to stretch during the appointment.[16]  Tr. 875, 878.  Moreover, Dr. Richardson completed two assessment forms regarding Mr. Garcia-Verdecia's ability to do work-related mental activities based on her exam, both of which indicated only mild limitations in his ability to do work-related mental activities except for moderate limitations in his ability to understand and remember complex instructions.  Tr. 875-76, 877-78.

Last, the ALJ explained and the record supports that in 2021 Dr. Trost's treatment notes indicated no evidence of inflammatory arthritis and recommended that Mr. Garcia-Verdecia's primary care provider "encourage a vigorous anti-fibromyalgia regimen" which included, *inter alia,* "regular daily exercise of 45 to 60 minutes[.]"  Tr. 900.  Additionally, on June 15, 2021, Dr. Trost noted that Mr. Garcia-Verdecia was no longer taking Duloxetine and Lyrica for fibromyalgia.  Tr. 907.  The ALJ found this change in Mr. Garcia-Verdecia's fibromyalgia treatment and the recommendation for daily physical activity were inconsistent with Mr. Garcia-Verdecia's hearing testimony that he remained reliant on his son as a caregiver.  Tr. 609. Mr. Garcia-Verdecia argues, without more, that this explanation reflects the ALJ cherry picked

---

[16] Dr. Richardson specifically noted that Mr. Garcia-Verdecia's capability of poor concentration would be affected *if* his pain were not controlled.  Tr. 878.

through the evidence.  Doc. 20 at 7.  However, the Court has already found the ALJ's determination reflects he considered all of the evidence as he was required to do.

Based on the foregoing, the Court finds that the ALJ properly evaluated Mr. Garcia-Verdecia's alleged symptoms pursuant to SSR 16-3p and that he included a discussion supported by substantial evidence of why Mr. Garcia-Verdecia's symptom-related functional limitations were inconsistent with the record.  Further, while not discussing every piece of evidence, the ALJ's determination demonstrates he considered all the evidence, including probative evidence that he rejected, and accounted for Mr. Garcia-Verdecia's alleged symptoms in the RFC.  Thus, while Mr. Garcia-Verdecia's arguments may show the ALJ could have interpreted the evidence to support a different outcome, they, at most, amount to an invitation to reweigh the evidence, which the Court cannot do.  *See Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 808 (10th Cir. 2021) (setting out the reviewing court's standard of review and noting that it does not "reweigh the evidence or retry the case").

### E.   <u>Medical Opinion Evidence</u>

Mr. Garcia-Verdecia argues that the ALJ improperly evaluated certain of the medical opinion evidence.  The Court addresses each in turn.

### 1.   <u>Andrea Bliss, PA-C</u>

Mr. Garcia-Verdecia argues that the ALJ impermissibly dismissed PA-C Bliss's opinion and failed to discuss whether it was consistent with the longitudinal evidence of Mr. Garcia-Verdecia's fibromyalgia.  Doc. 20 at 10-14.  Mr. Garcia-Verdecia cites PA-C Bliss's May 17, 2019, treatment note in which she documents his reported limitations and argues the ALJ failed to determine if the limitations, as reported by Mr. Garcia-Verdecia, were supported by relevant evidence and the record as a whole.  *Id.*  Mr. Garcia-Verdecia argues that the ALJ failed to

discuss PA-C Bliss's treatment relationship with him and her medical specialization, two factors

that support her opinion.  *Id.*  Mr. Garcia-Verdecia also argues that the ALJ was required to

analyze the entirety of PA-C Bliss's opinion instead of dismissing it as conclusory.  *Id.*

The Commissioner contends that it was proper for the ALJ to discount PA-C Bliss's

opinion based on her acknowledgement that she did not have the expertise to fill out a functional

capacity evaluation form on Mr. Garcia-Verdecia's behalf and because her statement regarding

his incapacity for work was conclusory with no indication of functional limitations.  Doc. 26 at

12-16.  The Commissioner further contends that the ALJ may, but is not required, to explain how

less important factors such as treatment relationship and specialization, and other factors, play

into his findings on an opinion's persuasiveness, but that any failure by the ALJ to discuss those

factors is not a basis for remand.  *Id.*  The Commissioner also contends that Mr. Garcia-

Verdecia's citing to treatment notes he believes support his self-reported limitations overlooks

that PA-C Bliss did not assess functional limitations on his ability to do work-related physical or

mental activities and is improperly asking this Court to reweigh the evidence.  *Id.*

The ALJ was not required to evaluate PA-C Bliss's statements as a medical opinion.  A

"medical opinion" is defined as

> a statement from a medical source about what [the claimant] can still do despite
> [his] impairment[s] and whether [he has] one or more impairment-related
> limitations or restrictions in [specified] abilities . . . [including his] ability to
> perform physical demands of work activities, such as sitting, standing, walking,
> lifting, carrying, pushing, pulling, or other physical functions (including
> manipulative or postural functions, such as reaching, handling, stooping, or
> crouching); [and his] ability to perform mental demands of work activities, such as
> understanding; remembering; maintaining concentration, persistence, or pace;
> carrying out instructions; or responding appropriately to supervision, co-workers,
> or work pressures in a work setting.

20 C.F.R. § 1513(a)(2)(i) and (ii) (eff. March 27, 2017).  The issue here centers on whether

PA-C Bliss provided a "statement from a medical source about what [Mr. Garcia-Verdecia

could] still do despite [his] impairments." *Id.*  The Court finds she did not.  First, Mr. Garcia-Verdecia's reliance on his self-reported functional limitations as documented in PA-C Bliss's May 17, 2019, treatment note as opinion evidence is misplaced.  Here, as the ALJ observed, it is undisputed that PA-C Bliss affirmatively chose not to assess Mr. Garcia-Verdecia's abilities to do work-related physical or mental activities "despite noting the claimant's own statements" and explicitly explained that she did not have the expertise to do so.  Tr. 474.  And next, PA-C Bliss's stated belief that Mr. Garcia-Verdecia did not have the capacity for work at this time, without more, is a statement on an issue reserved to the Commissioner.  Thus, the ALJ was not required to evaluate PA-C Bliss's statement as medical opinion evidence and the Court finds no error in his evaluation.  *See Staheli v. Commissioner, SSA*, ___ F.4th ___, 2023 WL 6629891, at *3-4 (10th Cir. 2023) (finding statement about prognosis for completing job training and maintaining employment and broad statements about requirements for holding down a job did not meet regulatory criteria for a medical opinion); *see also Mayberry v. Astrue*, 461 F. App'x 705, 708 (10th Cir. 2012) ("[u]nder the controlling regulations, the final responsibility for deciding the ultimate issue of whether a social security claimant is 'disabled' or 'unable to work' is reserved to the Commissioner."); 20 C.F.R. § 404.1520b(c) (explaining that for claims filed on or after March 27, 2017, statements that an individual is able or unable to work or which fail to provide descriptions of a claimant's "functional abilities and limitations" are categorized as "[s]tatements on issues reserved to the Commissioner" and "inherently neither valuable nor persuasive," and the ALJ need not provide any analysis as to how he considered such statements).

2.      **Mayre Shuttleworth, LPCC**

Mr. Garcia-Verdecia argues the ALJ improperly evaluated LPCC Shuttleworth's opinion

regarding his ability to do work-related mental activities.  Doc. 20 at 14-19.  He argues that the

ALJ made multiple errors and engaged in an impermissible picking and choosing from the

evidence which is contrary to law.  *Id.*  For example, Mr. Garcia-Verdecia argues that the ALJ

cites to only four pages of the record spanning two visits to demonstrate putative improvement

and that the LPCC Shuttleworth's records overall support Mr. Garcia-Verdecia's ongoing

struggle with pain, depression, anxiety, and sleep.  *Id.*  Mr. Garcia-Verdecia also argues that

LPCC Shuttleworth's opinion is consistent with other provider treatment notes that indicated he

felt sad, useless, guilty and anxious; was noted to have a blunted or restricted affect, stressed

mood and not sleeping well; and that he did not have the capacity to work.  *Id.*  Mr. Garcia-

Verdecia further argues that the ALJ failed to discuss LPCC Shuttleworth's treatment

relationship with him and her medical specialization, two factors that support her opinion.  *Id.*

Mr. Garcia-Verdecia also argues that the ALJ improperly disregarded LPCC Shuttleworth's

opinion based on the lack of "independent" findings which is not a requirement.  *Id.*

The Commissioner contends that despite citing only two of LPCC Shuttleworth's

treatment notes, the Court can follow the ALJ's reasoning that LPCC Shuttleworth's August

2019 opinion is not supported based on her more recent treatment notes demonstrating

Mr. Garcia-Verdecia's improvement.  Doc. 26 at 16-18.  As further evidence, the Commissioner

contends that had the ALJ cited additional recent treatment notes prepared by LPCC

Shuttleworth, they similarly indicate that Mr. Garcia-Verdecia was "doing extremely well" and

note normal mental status examinations.  *Id.*  The Commissioner contends that the ALJ

reasonably evaluated the record as a whole and did not ignore abnormal findings to conclude that

LPCC Shuttleworth's opinion was inconsistent with numerous records that indicated normal and/or unremarkable mental status exams. *Id.* The Commissioner contends Mr. Garcia-Verdecia is asking the Court to reweigh the evidence.

The Commissioner further contends that the ALJ may, but is not required to, explain how less important factors such as treatment relationship and specialization, and other factors, play into his findings on an opinion's persuasiveness, but that any failure by the ALJ to discuss those factors is not a basis for remand. *Id.* The Commissioner contends that it was reasonable for the ALJ to point out that Mr. Garcia-Verdecia helped complete the assessment form and further notes that LPCC Shuttleworth indicated limitations not only based on Mr. Garcia-Verdecia's mental impairments, but also due to his fibromyalgia and bilateral shoulder conditions which LPCC Shuttleworth noted were outside of her expertise. *Id.* The Commissioner contends that to the extent the ALJ's rationale was flawed as to this explanation, any error was harmless because the ALJ provided other valid reasons for finding LPCC Shuttleworth's opinion unpersuasive. *Id.*

The ALJ's explanations for finding LPCC Shuttleworth's opinion unpersuasive are supported by substantial evidence. The ALJ pointed out that treatment notes subsequent to LPCC Shuttleworth's August 20, 2019, opinion indicated improvement such that the level of severity in the functional limitations she assessed were not supported. This finding is supported by the record.[17] *See* Section III.A.6., *supra*. The ALJ also noted and cited numerous treatment records to demonstrate that LPCC Shuttleworth's opinion of Mr. Garcia-Verdecia's ability to do work-related mental activities was inconsistent with mental status findings in the record as

---

[17] In support of his argument, Mr. Garcia-Verdecia cites to LPCC Shuttleworth's records from 2019 that predate LPCC Shuttleworth's August 20, 2019, opinion. Doc. 20 at 17.

whole.  This finding is supported by the record.[18]  Last, while a family doctor's advocating for

his patient is not good reason to reject a treating physician's otherwise well-supported opinion,

here the ALJ cited both Dr. Shuttleworth's treatment notes and treatment notes from the record

as a whole demonstrating her opinion was not well supported.  As such, the Court finds no error

with the ALJ's explanation.  *McGoffin v. Barnhart,* 288 F.3d 1248, 1253 (10th Cir. 2002)

(observation that doctor naturally advocates for his patients not legitimate grounds for

discrediting medical opinion); *see also Hinton v. Massanari,* 13 F. App'x 819, 824 (10th

---

[18] The ALJ cited the following records - Ex. 1F/12: Dr. Cano June 23, 2018, Treatment Note (cooperative, appropriate mood and affect, no tics or compulsions, speech patterns and content normal) – Tr. 312; Ex. 1F/25: Dr. D'Arlach May 16, 2018, Treatment Note (pleasant, educated, talkative, guilt-ridden, good judgment and insight, few sources of support, no SI, no HI, no hallucinations, no delusions; endorsed depression, chronic pain, insomnia) – Tr. 325; Ex. 3F/4-5: Dr. Manole October 5, 2018, Consultative Exam (claimant was alert and had appropriate eye contact, speech and mood; memory and concentration were normal; claimant exhibited normal behavior and cognitive function during the examination) - Tr. 365-67; Ex. 4F/18: Dr. Cano March 19, 2019, Treatment (cooperative, appropriate mood and affect, no tics or compulsions, speech patterns and content normal) – Tr. 386; Ex. 4F/24: Dr. Cano September 11, 2018, Treatment Note (cooperative, appropriate mood and affect, normal speech patterns and content) – Tr. 392; Ex. 4F/45: Dr. D'Arlach September 26, 2018, Treatment Note (pleasant, educated, talkative, guilt-ridden, good judgment and insight, few sources of support, no SI, no HI, no hallucinations, no delusions; endorsed depression, chronic pain, insomnia) – Tr. 413; Ex. 4F/63: PT Christine Zampach February 7, 2019, Treatment Note (patient is a tall, overweight male with sad look, flat affect; oriented x 3) – Tr. 431; Ex. 5F/20: Dr. Cano March 19, 2019, Treatment Note (cooperative, appropriate mood and affect, no tics or compulsions, speech patterns and content normal) – Tr. 455; Ex. 5F/24: Dr. Cano December 10, 2018, Treatment Note (cooperative, appropriate mood and affect, no tics or compulsions, speech patterns and content normal) – Tr. 459; Ex. 7F/9: Dr. Cano January 23, 2020, Treatment Note (cooperative, appropriate mood and affect) – Tr. 534; Ex. 7F/15: Dr. Cano September 6, 2019, Treatment Note (cooperative, appropriate mood and affect, no tics or compulsions, speech patterns and content normal) – Tr. 540; Ex. 7F/20-21: Dr. Cano November 5, 2019, Treatment Note (cooperative, appropriate mood and affect) – Tr. 546; Ex. 7F/24: PA-C Bliss February 20, 2020, Treatment Note (affect seems brighter than previous; less psychomotor retardation) – Tr. 549; Ex. 7F/26: LPCC Shuttleworth January 29, 2020, Treatment Note (very engaged, makes consistent eye contact, less teary, affect somewhat improved and broadened, thought process organized and linear, speech nonpressured of normal rate and volume; shows some intermittent psycho-agitation related to left leg movement; insight is fair; judgment is logical; impulsivity is controlled) – Tr. 551-52; Ex. 7F/35: LPCC Shuttleworth June 13, 2019, Treatment Note (engaged, makes consistent eye contact, less teary, thought process is organized and linear, speech is nonpressured of normal rate and volume; shows some psychomotor agitation that disappears with relaxation technique; mood is "stressed"; affect somewhat restricted with some appropriate smiles; insight is fair; judgment is logical and impulsivity is controlled) – Tr. 560; Ex. 7F/56: Frank Ralls, M.D., November 11, 2019, Treatment Note (very delightful 44 y/o male in no acute distress) – Tr. 581; Ex. 12F/3-4: Dr. Richardson's March 25, 2022, Consultative Exam (good grooming and hygiene, inappropriate avoidant eye contact, observable psychomotor agitation of foot tapping and picking and chewing at nails; cooperative and pleasant; spontaneous speech of normal rate, rhythm and tone; "down and anxious mood"; become tearful at times; tangential thought process; adequate attention and concentration, no distractibility; recent and remote memory grossly intact; insight and judgment fair) – Tr. 873-74; Ex. 16F/6: Dr. Trost's February 24, 2021, Treatment Note (normal cognition, no depression noted) – Tr. 905.

Cir.2001) (finding that an opinion solicited to aid a claimant in supporting claim for benefits

provides no basis for discrediting an otherwise well-supported source opinion).

Last, Mr. Garcia-Verdecia's argument that the ALJ erred by not discussing certain lesser

factors in his evaluation of LPCC Shuttleworth's opinion necessarily fails because the

regulations clearly provide that "[w]e may, but are not required to, explain how we considered

the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate

how we consider medical opinions and prior administrative medical findings in your case

record."  20 C.F.R. § 1520c(b)(2).  As such, the Court finds no error.

### 3.    **Dr. Cano**

Mr. Garcia-Verdecia argues that the ALJ failed to properly evaluate Dr. Cano's opinion

regarding Mr. Garcia-Verdecia's ability to do work-related physical activities.[19]  Doc. 20 at 19-

23.  Mr. Garcia-Verdecia argues that the ALJ substituted his lay opinion for that of Dr. Cano

when he generally stated that Dr. Cano's limitations are an "overstatement" of Mr. Garcia-

Verdecia's limitations.  *Id.*  Mr. Garcia-Verdecia argues that the ALJ's analysis failed to address

whether Dr. Cano's opinion was supported and that Dr. Cano's treatment notes in fact support

that he documented Mr. Garcia-Verdecia complaints of pain and noted objective findings of

tenderness along spine and decreased flexion of spine.  *Id.*  Mr. Garcia-Verdecia also argues that

the ALJ's inconsistency finding ignores the longitudinal evidence and that other doctors "echoed

Dr. Cano's findings of serious limitations" and decreased ability to perform certain work-related

physical tasks.  *Id.*  Mr. Garcia-Verdecia further argues that the ALJ failed to discuss Dr. Cano's

treatment relationship with him and his medical specialization, two factors that support his

---

[19] Mr. Garcia-Verdecia limits his argument to Dr. Cano's July 11, 2022, assessment of his ability to do work-related physical activities and does not address Dr. Cano's "To Whom It May Concerns Letters."  Doc. 20 at 19, fn. 6.

opinion.  *Id.*  Mr. Garcia-Verdecia also argues that the ALJ improperly disregarded Dr. Cano's

opinion based on the date Dr. Cano opined that Mr. Garcia-Verdecia's assessed limitations were

present, *i.e.,* 2007, because that date could be taken to mean when Mr. Garcia-Verdecia first had

fibromyalgia symptoms.  *Id.*

      The Commissioner contends that the ALJ's finding that Mr. Garcia-Verdecia worked

until 2018 as a reason to find Dr. Cano's opinion not persuasive addresses supportability.  Doc.

26 at 19-21.  The Commissioner contends that the ALJ's finding that Dr. Cano had overstated

Mr. Garcia-Verdecia's limitations goes to his consistency analysis and that the ALJ cited

treatment notes from the record as a whole to support his finding.  *Id.*  The Commissioner further

contends that Mr. Garcia-Verdecia is asking the Court to reweigh certain evidence which the

Court cannot do.  *Id.*  Last, the Commissioner contends that at the end of his RFC assessment,

the ALJ explained that while finding Mr. Garcia-Verdecia was not disabled given the generally

normal and unremarkable objective findings in the record as a whole, the light RFC accounted

for the objective abnormal findings in the record Mr. Garcia-Verdecia claims the ALJ ignored,

*i.e.,* positive trigger points, tenderness, decreased shoulder and back range of motion, reduced

shoulder strength and pain, swayback, back spasms, tangential thoughts, limited recall, and

concerns that pain could affect concentration.  *Id.*  In sum, the Commissioner, contends that the

Court can follow the ALJ's reasoning and determine that he reasonably found Dr. Cano's

opinion was inconsistent with the evidence.

      The Court finds the ALJ's reasons for finding Dr. Cano's opinion unpersuasive are

supported by substantial evidence.  To begin, the Court finds that the ALJ did not substitute his

lay opinion for that of Dr. Cano because here the ALJ found Dr. Cano's opinion unpersuasive on

the basis of contradictory medical evidence.[20]  *See McGoffin*, 288 F.3d at 1252 ("In choosing to

reject the treating physician's assessment, an ALJ may not make speculative inferences from

medical reports and may reject a treating physician's opinion outright only on the basis of

contradictory medical evidence and *not due to his or her own credibility judgments, speculation

or lay opinion.*") (internal cites omitted) (emphasis in original).

Next, the ALJ's discounting of Dr. Cano's opinion based on Dr. Cano's assessment that

Mr. Garcia-Verdecia's disabling limitations were present since 2007 is a legitimate basis for

doing so.  The assessment form Dr. Cano completed specifically asked "[w]hat is the earliest

date that the symptoms *and limitations* in this questionnaire applies," to which Dr. Cano

responded "2007."  Doc. 885 (emphasis in original).  Here, as the ALJ noted, it is undisputed that

Mr. Garcia-Verdecia performed substantial gainful activity through his alleged onset date of

April 30, 2018.  If a person engages in substantial gainful activity the person is, by definition, not

disabled.  *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is

substantial gainful activity, we will find that you are not disabled regardless of your medical

---

[20] The ALJ cited the following treatment notes - Ex. 1F/12: Dr. Cano June 23, 2018, Treatment Note (no acute distress, oriented, no gross neurological deficits, moved extremities appropriately, CN2-12 grossly intact) - Tr. 312; Ex. 3F/3-6: Dr. Manole October 5, 2018, Consultative Exam (preserved strength, 5/5 in all extremities, full range of motion, sensation intact throughout, able to lift/carry/handle light objects, able to squat/rise with ease, no difficult getting up and down from exam table; able to walk on heels and toes, tandem walking normal, able to hop on one foot bilaterally) - Tr. 364-68; Ex. 4F/43: Dr. Bliss December 26, 2018, Treatment Note (DTRs 2+ to biceps, triceps, brachioradialis, knees and ankles, good strength to upper and lower extremities against resistance, neck has good range of motion) – Tr. 413; Ex. 4F/63: PT Christine Zampach February 7, 2019, Treatment Note (increased lumbar lordosis in standing, increased lateral shift left greater than right in gait, bilateral paraspinal pain and spasm) – Tr. 431; Ex. 7F/9: Dr. Cano January 23, 2020, Treatment Note (T spine tenderness at midline) – Tr. 534; Ex. 7F/18: Jacob Christensen, D.O., June 20, 2019, Treatment Note (shoulder exam – no gross deformity, normal ROM, tenderness to palpation generally over lateral and anterior shoulders, 5/5 abduction, 5/5 external rotation, 5/5 internal rotation, 5/5 subscapular lift, empty can + for pain without any weakness bilaterally) – Tr. 543; Ex. 7F/24: PA-C Bliss February 20, 2020, Treatment Note (good flexion of spine without pain, no tenderness palpating iliocostalis muscles along the thoracic spine, no percussive tenderness over the thoracic or lumbar spine, point tenderness with deep palpation right at midline over T2, no crepitus with palpation, decent range of motion to his shoulder but they do hurt with flexion and internal rotation, fingers without clubbing or cyanosis) – Tr. 549.

condition or your age, education, and work experience").  As such, the ALJ correctly observed

that Dr. Cano's assessed onset date was not supported by the record as a whole.

Third, the record evidence Mr. Garcia-Verdecia cites to support his argument that

Dr. Cano's opinion is supported by his treatment notes consists primarily of Mr. Garcia-

Verdecia's subjective complaints of pain and related symptoms and is either silent on or fails to

contain contradictory objective findings.[21]  Doc. 20 at 21.  Moreover, inasmuch that Mr. Garcia-

Verdecia cites objective medical evidence, his argument remains unavailing as it functions as an

invitation to reweigh the evidence before the ALJ, contrary to the charge of the applicable

standard of review.  *Deherrera*, 848 F. App'x at 808.

Last, Mr. Garcia-Verdecia's argument that the ALJ erred by not discussing certain lesser

factors in his evaluation necessarily fails because the regulations clearly provide that "[w]e may,

but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5)

of this section, as appropriate, when we articulate how we consider medical opinions and prior

administrative medical findings in your case record."  20 C.F.R. § 1520c(b)(2).  As such, the

Court finds no error.

### 4.    Dr. Richardson

Mr. Garcia-Verdecia argues that the ALJ's analysis of Dr. Richardson's opinion is

lacking and fails to account for Dr. Richardson's assessed moderate limitations.  Doc. 20 at 23-

---

[21] Dr. Cano saw Mr. Garcia-Verdecia fourteen times from April 17, 2018, through May 9, 2022. *See* Section III.A.3., *supra*.  But for two exceptions, Dr. Cano's physical exams were consistently unremarkable. *Id.*  In support of his argument, Mr. Garcia-Verdecia cites nine treatment notes, only one of which contains remarkable physical exam findings and is not one of Dr. Cano's treatment notes, *i.e.,* on May 9, 2022, Mr. Garcia-Verdecia presented to Megan Louise Moorhead, M.D., at UNM Family Clinic.  Tr. 938-41.  He reported worsening back pain. *Id.* On physical exam, Dr. Moorhead noted slowed gait, stiff back, tenderness along with C-spine, T-spine and L-spine, as well as along paraspinous muscles, decreased flexion to spine, normal range of motion bilateral upper extremities, 4/5 shoulder abduction bilaterally, 4/5 grip strength bilaterally, 5/5 strength to bilateral lower extremities. *Id.*  Notably, the ALJ did not ignore but discussed these findings elsewhere in his determination.  Tr. 606.

27.  Mr. Garcia-Verdecia relies on Dr. Richardson's narrative of greater limitations in the context

of uncontrolled pain, as opposed to the assessment forms Dr. Richardson completed based on her

exam, and argues that the ALJ impermissibly substituted his opinion for that of Dr. Richardson's

by characterizing her greater limitations as conjecture.  *Id.*  Mr. Garcia-Verdecia further argues

that the ALJ's "templated analysis" demonstrates consistency between the treatment notes in the

record as a whole and Dr. Richardson's assessed limitations due to uncontrolled pain.  *Id.*

Mr. Garcia-Verdecia argues that it is well documented that Mr. Garcia-Verdecia suffers from

pain which is cyclically exacerbated by his mental state and stress and that the ALJ himself

"opined a moderate limitation in the ability to concentrate, persist and maintain pace" at step two

and acknowledged that pain could affect Mr. Garcia-Verdecia's concentration at times.  *Id.*  To

that end, Mr. Garcia-Verdecia argues the ALJ's RFC should have accounted for what

Mr. Garcia-Verdecia is able to do when experiencing uncontrolled pain and not just when his

pain is controlled, and that the mental abilities needed for any job include an ability to maintain

concentration and attention for extended periods.  *Id.*

The Commissioner contends that Dr. Richardson's opinion was inconsistent in that she

noted certain limitations due to "uncontrolled pain," but nevertheless concluded based on her

exam that Mr. Garcia-Verdecia had no more than mild mental limitations, except for a moderate

limitation with respect to complex instructions and judgments on complex decisions.  Doc. 26 at

21-24.  The Commissioner contends that the ALJ properly found that Dr. Richardson's

conclusions on the form assessments were supported by Dr. Richardson's examination which

noted few difficulties on testing and that Mr. Garcia-Verdecia appeared relatively pain free

during the exam.  *Id.*  The Commissioner contends the ALJ's RFC properly accounts for these

assessed limitations.  *Id.*   The Commissioner contends that the ALJ correctly found that

treatment notes in the record as a whole were aligned with Dr. Richardson's assessed mild

limitations and that Mr. Garcia-Verdecia's disagreement with the Commissioner's view of the

evidence is asking the Court to reweigh the evidence.  *Id.*  The Commissioner contends that the

ALJ's rating of Mr. Garcia-Verdecia's impairments at step two serves a different purpose than

determining an RFC assessment at step four and that the ALJ included limitations in the RFC to

account for Mr. Garcia-Verdecia's symptoms related to pain and his ability to concentrate.  *Id.*

The Court finds that the ALJ applied the correct legal standards in evaluating

Dr. Richardson's opinion.  To begin, Social Security regulations and rulings instruct that an

adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph

C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at

steps 2 and 3 of the sequential evaluation process."  20 C.F.R. § 404.1520a and SSR 96-8p, 1996

WL 374184, at *4.  As such, Mr. Garcia-Verdecia's reliance on and argument that the ALJ

should have incorporated greater limitations in Mr. Garcia-Verdecia's ability to do work-related

mental activities at step four based on his step two findings is misplaced.

Second, Mr. Garcia-Verdecia's argument that the ALJ's mental limitations fails to

account for the concentration skills needed for "any job," overlooks that all of the jobs the VE

identified as commensurate with the ALJ's RFC assessment are *unskilled* for which

concentration is not critical.  Tr. 611.  *See generally Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th

Cir. 2015) (finding the ALJ accounted for moderate limitation in concentration, persistence, and

pace problems in his RFC assessment by limiting claimant to unskilled work) (citing POMS § DI

25020.010, § B(3) and noting that the capacity to perform unskilled work includes ability to

maintain attention for extended periods of two-hour segments but that concentration is "not

critical")).  Thus, Mr. Garcia-Verdecia's argument fails to demonstrate how his alleged moderate limitations in concentration are not accounted for with a limitation to unskilled work.  Tr. 610.

Third, the Court finds that the ALJ did not substitute his lay opinion for that of Dr. Richardson by discounting the greater limitations she assessed in the context of "uncontrolled pain," because he did so on the basis of contradictory evidence.  *McGoffin*, 288 F.3d at 1252.  Here, the ALJ explained that those limitations were not supported by Dr. Richardson's exam notes which indicated Mr. Garcia-Verdecia appeared to be relatively pain free during the exam.  The ALJ further explained that Dr. Richardson's assessment forms indicating mild limitations were supported by her exam findings and were consistent with the record as a whole.[22]  The record supports these findings.

Finally, Mr. Garcia-Verdecia's argument that the ALJ cherry picked through the evidence and ignored evidence to support a more restricted RFC, without more, is not supported and invites the Court to reweigh the evidence.

For all of the foregoing reason, the Court finds that the ALJ's RFC assessment included a narrative discussion describing how the evidence supported his conclusions.  The Court further finds that the ALJ applied the correct legal standards in evaluating Mr. Garcia-Verdecia's subjective complaints and properly evaluated the medical opinion evidence.  The Court, therefore, finds no error.

---

[22] *See* fn. 16, *supra*.

## IV.  <u>Conclusion</u>

For the reasons stated above, Mr. Garcia-Verdecia's Motion for Remand (Doc. 20) is

**DENIED** and the Administration's findings are **AFFIRMED**.

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**

48